UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CASE NO.:

AIX SPECIALTY INSURANCE
COMPANY,

    Plaintiff,

vs.

DORIS M. DIAMOND, FORE RANCH SENIOR HOUSING, LLC, WEK FORE RANCH, INC., STEPHEN D. WALTERS, WILLIAM E. KARNS, SELAH MANAGEMENT GROUP, LLC, SELAH HOLDINGS, LLC, ALAN D. PARRISH, WILLIAM T. FILLIPONE, OCALA OPERATOR, LLC, LAURA POLITZ, SHANE EDWAR POTTER, and SHEILA O. OETTING (as to BRENTWOOD AT FORE RANCH f/k/a BRENTWOOD OF FORE RANCH),

    Defendants.
_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, AIX Specialty Insurance Company ("AIX"), by and through its undersigned counsel, hereby sues Defendants, Doris M. Diamond, Fore Ranch Senior Housing, LLC, Wek Fore Ranch, Inc., Stephen D. Walters, William E. Karns, Selah Management Group, LLC, Selah Holdings, LLC, Alan D. Parrish, William T. Fillipone, Ocala Operator, LLC, Laura Politz, Shane Edward Potter, and Sheila O. Oetting (as to Brentwood at Fore Ranch f/k/a Brentwood of Fore Ranch) (collectively "Defendants"), for declaratory relief and states the following:

1

## NATURE OF ACTION

1. This is an action by AIX for a judgment declaring the parties" respective rights, duties, and obligations under a surplus, claims-made policy of insurance.

2. AIX seeks a judgment declaring that it has no duty to defend or indemnify Fore Ranch Senior Housing, LLC ("Fore Ranch"), Wek Fore Ranch, Inc. ("Wek"), Stephen D. Walters ("Walters"), William E. Karns ("Karns"), Selah Management Group, LLC ("Selah Management"), Selah Holdings, LLC ("Selah Holdings"), Alan D. Parrish ("Parrish"), William T. Fillipone ("Fillipone"), Ocala Operator, LLC ("Ocala Operator"), Laura Politz ("Politz"), Shane Edward Potter ("Potter"), and Sheila O. Oetting ("Oetting") (collectively "the Fore Ranch Defendants") under the surplus, claims-made policy of insurance issued to Fore Ranch in relation to an underlying personal injury action filed by Doris M. Diamond ("Diamond"), by and though, Susan T. Carter, Attorney-in-Fact ("Carter"), in the Circuit Court of the 5th Judicial Circuit in and for Marion County, Florida ("the Underlying Litigation").

## GENERAL ALLEGATIONS

3. At all material times, AIX was a Delaware insurance company with a principal place of business in Connecticut.

4. At all material times, Fore Ranch was a Florida Limited Liability Company with its principal address at 286 107th Avenue, No. 300, Treasure Island, Florida 33706. The only managing member of Fore Ranch is William Karns who is a resident and citizen of Florida.

5. At all material times, Wek was a Florida for Profit Corporation with its principal address at 286 107th Avenue, No. 300, Treasure Island, Florida 33706.

6. At all material times, Walters was a resident of Pinellas County, and a citizen of Florida.

7. At all material times, Karns was a resident of Pinellas County, and a citizen of Florida.

8. At all material times, Selah Management was a Florida Limited Liability Company with its principal address at 115 Professional Drive, Suite 101, Ponte Vedra Beach, Florida 32082. The managing members of Selah Management were Alan Parrish and William Filippone, both of whom resident in and or citizens of Florida.

9. At all material times, Selah Holdings was a Florida Limited Liability Company with its principal address at 115 Professional Drive, Suite 101, Ponte Vedra Beach, Florida 32082. The managing members of Selah Management were Alan Parrish and William Filippone, both of whom resident in and or citizens of Florida.

10. At all material times, Parrish was a resident of Saint Johns County, and a citizen of Florida.

11. At all material times, Fillipone was a resident of Saint Johns County, and a citizen of Florida.

12. At all material times, Ocala Operator was a Foreign Limited Liability Company with its principal address at 1416 Clarkview Road, Baltimore, Maryland 21209. The only managing member of Ocala Operator is Kenneth Assiran and resident and citizen of Maryland.

13. At all material times, Politz was a resident of Hillsborough County, and a citizen of Florida.

14. At all material times, Potter was a resident of Marion County, and a citizen of Florida.

15. At all material times, Oetting was a resident of Sumter, and a citizen of Florida.

16. At all material times, Diamond was a resident of Marion County, and a citizen of Florida.

17. At all material times, Carter was the Attorney-in-Fact of Diamond, pursuant to a General Power of Attorney evidencing Carter's authority to bring an action on Diamond's behalf.

18. This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between the Plaintiff and each of the Defendants, and AIX has a good faith basis to believe the amount in controversy exceeds $75,000.00, when considering Diamond's claimed damages in the Underlying Litigation. Furthermore, the at-issue insurance policy contains a $1,000,000.00 per occurrence limit of liability. AIX in good faith anticipates substantial defense costs will be incurred.

19. Venue is proper because a substantial portion of the events giving rise to the claims occurred in this district, pursuant to 28 U.S.C. §1391.

20. This action is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and seeks declaratory relief as to AIX"s obligations to the Fore Ranch Defendants in relation to the personal injury action commenced by Diamond. AIX is uncertain as to its duties, rights, and obligations and files this declaratory judgment action to resolve questions of coverage under the subject insurance policy. An actual and justiciable dispute over these duties, rights, and obligations exists between the parties.

## THE AT-ISSUE POLICY

21. At all times material, AIX had in full force and effect a surplus, claims-made policy of insurance issued to Fore Ranch numbered L1J A3122668. The effective dates of the policy are from May 22, 2014 through May 22, 2015 ("the policy"). *See* referenced insurance policy attached as Exhibit "A."

22. The policy contains a claims-made disclosure notice that provides:

> **THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS. SUBJECT TO ITS TERMS, THIS COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR ANY EXTENDED REPORTING PERIOD THAT MAY APPLY. PLEASE READ THE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS.**

23. The policy contains a Commercial General Liability Coverage Part, as well as an Eldercare Professional Liability Coverage Part.

24. The policy contains endorsement 421-2422 08 12, titled "Commercial General Liability Optional Extended Reporting Period Endorsement." Per this endorsement:

> The reporting period for "bodily injury", "property damage" or personal and advertising injury" covered by the policy shall be extended to apply to any "claims" made or "suits" brought against the insured and reported to the company during the times indicated above [January 15, 2015 through January 15, 2018]. Coverage applies only with respect to "bodily injury", "property damage" or "personal and advertising injury" that occurred before the end of the policy period."

25. The policy likewise contains endorsement 421-2441 08 12, titled "Professional Liability Optional Extended Reporting Period Endorsement." This endorsement provides:

> The Extended Reporting Period does not extend the policy period of change the scope of coverage provided. It applies only to "claims" for "damages" from an "incident" that occurred before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations, if the "claims" are reported to us during the Optional Extended Reporting Period Effective Dates shown the Schedule above [January 15, 2015 through January 15, 2018].

26. The policy defines a "claim" as:

> "Claim" means an oral or written demand received by the insured for money arising out of an "occurrence" or a "personal and advertising injury" offense. The service of "suit" against the insured

5

arising out of an "occurrence" or a "personal and advertising injury" offense will also be considered a demand.

27. The policy also contains endorsement 421-2415 08 12, titled "Eldercare Additional Policy Conditions," which provides as follows:

> **I. Claims for Residents of the Insured**
>
> 1. If a "claim" for "bodily injury" or "personal or advertising injury" is asserted against any insured by resident(s) of the insured's covered location(s), and the "claim" arises, in whole or in part, from "eldercare professional services", then the applicable limit applicable to the "claim" will be the Professional Liability Aggregate Limit instead of the Limits of Insurance of the Commercial General Liability policy.

28. Furthermore, the Commercial General Liability Part is subject to endorsement 421-2426 08 12, titled "Eldercare General Liability Amendatory Endorsement." Per this endorsement, there is no coverage for:

> **Professional Services**
> A. "Bodily injury" or "property damage" caused by the rendering of or failure to render any professional service, advice or instruction:
>
>   1. By any insured;
>
>   2. By any person or organization on your behalf; or
>
>   3. For which any insured assumed liability by reason of a contract or agreement.
>
> B. This exclusion applies regardless of whether or not such service, advice or instruction is ordinary to any insured's profession, including but not limited to:
>
>   1. "Eldercare professional services"
>
> ***
>
> **Medical Professional Services**
> "Bodily injury" or "property damage" arising out of providing or failing to provide medical professional services by any physician, surgeon, physicians assistant, nurse practitioner, medical intern,

6

    medical resident, dentist, psychiatrist or chiropractor or other licensed health care professional.

    **"Rights of Residents"**
    Any "claim" arising out of the violation of "rights of residents."

29. Per the policy, "eldercare professional services" are defined as follows:

    **"Eldercare professional services"**
    **A.** Mean the following services performed on your behalf:

        **1.** "Administrative services";

        **2.** "Healthcare services"; or

        **3.** "Barbers and beauticians professional services."

30. The policy defines "administrative services" as follows:

    "Administrative services" mean the planning, organizing, directing and controlling of your resident health care operations.

31. The policy defines "healthcare services" as follows:

    "Healthcare services" means services performed by an insured to care for or assist your patients provided such insured is licensed, trained or qualified to person such services in the jurisdiction in which such services are rendered.

32. The policy defines "rights of residents" as follows:

    "Rights of residents" means:

    **a.** Any right granted to a nursing home resident under any state law regulating your business as a resident health facility.

    **b.** The rights of residents as included in the United States Department of Health and Welfare regulations governing participation of Intermediate Care Facilities and Skilled Nursing Facilities, regardless of whether your facility is subject to those regulations.

33. The insuring agreement of the Eldercare Professional Liability Coverage Form provides:

    **1. Insuring Agreement**

7

> **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" as a result of a "claim" arising out of an "incident" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply.
>
> ***
>
> **b.** This insurance applies to "damages" only if:
>
> **(2)** The "incident" did not occur before the Retroactive Date, if any, shown in the Declarations of this Coverage Part, or after the end of the policy period.

34. Further, the policy also contains endorsement 421-2425 08 12, titled "Notice of Incident Endorsement," which provides as follows:

> **c.** A "claim" by a person or organization seeking "damages" will be deemed to have been made at the earlier of the following times:
>
> **(1)** If during the policy period:
>
> **(a)** You become aware of an "occurrence" or any facts or circumstances that occurred on or after the retroactive date but prior to the end of the policy period, which may result in a "claim" against you; and
>
> **(b)** You give us written notice of the potential "claim" as soon as practicable.
>
> Then any claim arising out of the circumstance which is subsequently made against you shall be deemed to have been first made at the time we received such written notice from you; or
>
> **(2)** When notice of the "claim" is received and recorded by any insured or by us, whichever comes first, if you did not give us written notice of an "occurrence" or any facts or other circumstances which may reasonably be expected to subsequently give rise to a "claim" against you…;

   **(3)** When we make a settlement in accordance with Paragraph **a.** above.

  All "claims" for damages because of "bodily injury" to the same person, including any damages claimed by any person or organization for care, loss or services, or death, resulting at the time from the bodily injury, will be deemed to have been made at the time of the first of those "claims" is made against any insured.

***

 **2. Duties in the Event of Occurrence, Offense Claim or Suit**

  **a.** If, during the policy period, you become aware of an "occurrence" or offense of any facts or other circumstances that occurred on or after the retroactive date but prior to the end of the policy period, which may reasonably be expected to subsequently give rise to a "claim" against you, you must give us written notice as soon as practicable, but in any event no later than the end of the policy period or any extended reporting period, if applicable.

**THE UNDERLYING LITIGATION**

35. On March 14, 2018, Diamond, by and though, Carter, Attorney-in-Fact, initiated the Underlying Litigation, which stems from alleged fall incidents that occurred at Brentwood at Fore Ranch, which is an assisted living facility located in Ocala, Florida ("the assisted living facility"). *See* Complaint attached as Exhibit "B."

36. Despite the foregoing, neither the claim nor the lawsuit was reported to AIX by any of the Fore Ranch Defendants until March 2019.

37. In the Underlying Litigation, Diamond alleges that she resided at the assisted living facility from September 6, 2013 to March 11, 2016. *See Compl.* ¶ 1-2.

38. Diamond further alleges that during her residency at the assisted living facility, she fell on "numerous" – yet unspecified – occasions ("the incidents"). *See Compl.* ¶ 77.

39. Diamond claims to have sustained the following injuries and infections as a result of the incidents: neck, pubic, and maxillary fracture; lacerations to her scalp, maxillary area, chin, inner left arm, and right eyebrow; contusions to her face and left forearm; hematomas with respect to her left bicep and left eyebrow; abrasions to her face; hyperglycemia; diarrhea; and, multiple infections, including urinary tract infections, E. coli, hemorrhagic cystitis, pneumonia, and sinusitis. *Id*.

40. According to Diamond's Complaint in the Underlying Litigation, the assisted living facility was operated by Fore Ranch and Ocala Operator and managed by Selah Management during the time that Diamond resided at the same. *See Compl.* ¶ 8, 25, and 51.

41. Diamond also claims that Fore Ranch is owned by Wek (38.73% ownership) and Walters (27.50% ownership). *See Compl.* ¶ 10 and 15.

42. Diamond claims that both Fore Ranch and Wek are managed by Karns. *See Compl.* ¶ 20.

43. Diamond claims that Selah Management is owned by Selah Holdings (100% ownership). *See Compl.* ¶ 30.

44. Diamond also claims that both Selah Management and Selah Holdings are managed by Parrish and Fillipone. *See Compl.* ¶ 36 and 42.

45. Diamond claims that Politz, Potter, and Oetting were administrators of the assisted living facility during the time that she resided at the same. *See Compl.* ¶ 53, 55, and 57.

46. Diamond's Complaint in the Underlying Litigation alleges the following causes of action:

      **a.** Negligence against the Fore Ranch Defendants (Count I);

      **b.** Breach of Fiduciary Duty against Ocala Operator (Count II);

      c. Breach of Fiduciary Duty against Fore Ranch (Count III);

      d. Aiding and Abetting Breach of Fiduciary Duty against Wek, Walters, Karns, Selah Management, Selah Holdings, Parrish, and Fillipone (Count IV); and,

      e. Violation of Florida Statute § 415.1111 against Wek, Walters, Karns, Selah Management, Selah Holdings, Parrish, and Fillipone (Count V).

47. AIX is defending the Fore Ranch Defendants in the Underlying Litigation under respective reservations of rights.

## COUNT I

48. AIX hereby adopts, realleges and incorporates by reference the allegations contained in paragraphs 1 through 47 above.

49. AIX believes and contends that there is no coverage for any of the Fore Ranch Defendants and all purported insureds under the subject policy for the claims asserted in the Underlying Litigation because the Fore Ranch Defendants failed to provide written notice of Diamond's claim within the policy period (May 22, 2014 through May 22, 2015) or within the extended reporting period (January 15, 2015 through January 15, 2018), as required.

50. AIX is in doubt of its rights under the policy and seeks a declaration of its rights and obligations with respect to the Underlying Litigation and its defense obligation related thereto.

51. AIX seeks the entry of a judgment by this Court declaring that under the policy, AIX does not have a duty to defend or indemnify the Fore Ranch Defendants and any other purported insured in connection with the Underlying Litigation because coverage is precluded by one or more of the above conditions, provisions, and exclusions.

52. A bona fide, actual, present, and practical need exists for the Court to declare the rights, privileges, and obligations of AIX, the Fore Ranch Defendants, and Diamond.

53. There exists a present ascertained or ascertainable state of facts concerning the rights and obligations of AIX under the subject insurance policy.

54. AIX, Fore Ranch, Wek, Walters, Karns, Selah Management, Selah Holdings, Parrish, Fillipone, Ocala Operator, Politz, Potter, Oetting, and Diamond have a present, actual, and antagonistic controversy in the subject matter described herein.

55. Pursuant to rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201, AIX is entitled to a declaration that the policy does not provide coverage for the claims asserted by Diamond.

56. All necessary and present interests are before the Court.

57. All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred or have been waived.

WHEREFORE, AIX Specialty Insurance Company respectfully requests this Court to enter a declaratory judgment determining:

- That AIX Specialty Insurance Company has no duty to defend Fore Ranch, Wek, Walters, Karns, Selah Management, Selah Holdings, Parrish, Fillipone, Ocala Operator, Politz, Potter, and Oetting with respect to the Underlying Litigation;

- The AIX Specialty Insurance Company has no duty to indemnify Fore Ranch, Wek, Walters, Karns, Selah Management, Selah Holdings, Parrish, Fillipone, Ocala Operator, Politz, Potter, and Oetting with respect to the Underlying Litigation; and,

➢ Any additional relief this Court deems just and appropriate.

Dated: August 21, 2019.

                Respectfully submitted,

                /s Scott A. Markowitz__
                Scott A. Markowitz
                Florida Bar No.: 016608
                TORRESVICTOR
                1451 W. Cypress Creek Road
                Suite 211
                Fort Lauderdale, FL 33309
                Tel.: 954-416-2468
                Fax: 561-270-0250
                Email: smarkowitz@torresvictor.com
                *Co-Counsel for AIX Specialty Insurance Company*